# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL A. JIMENEZ, | 1:07-cv-01191-LJO-GSA-PC |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND |
| v. | |
| R. WENCIKER, et al., | ORDER FOR CLERK TO SEND PLAINTIFF A § 1983 COMPLAINT FORM |
| Defendants. | THIRTY DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT |
| _____/ | |

**I.      RELEVANT PROCEDURAL HISTORY**

Plaintiff Miguel A. Jimenez ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on August 16, 2007. (Doc. 1.) The Court screened the Complaint pursuant to 28 U.S.C. § 1915A and issued an order on December 29, 2008, finding that Plaintiff stated cognizable claims for inadequate medical care under the Eighth Amendment against defendants Wenciker, Nocye, O'Brien, and Tate ("Defendants"), and directing the United States Marshal to serve process. (Doc. 15.) On May 26, 2009, Defendants filed a motion to dismiss the Complaint against defendants O'Brien and Tate. (Doc. 31.) On April 19, 2010, the Court granted Defendants' motion to dismiss, with leave to amend. (Doc. 42.) On May 20, 2010, Plaintiff filed the First Amended Complaint, which is now before the Court for screening. (Doc. 43.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. While factual allegations are accepted as true, legal conclusions are not. Id. at 1949.

## III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is currently incarcerated at Corcoran State Prison in Corcoran, California. The events at issue allegedly occurred at the California Correctional Institution ("CCI") in Tehachapi, California, while Plaintiff was incarcerated there. Plaintiff names as defendants Correctional Officer R. Wenciker, Sergeant E. Nocye, Doctor C. O'Brien, and Chief Medical Officer H. Tate, all employees of the California Department of Corrections and Rehabilitation ("CDCR") at CCI.

Plaintiff alleges as follows in the First Amended Complaint. In March 2004, while housed at Ironwood State Prison in Blythe, California, Plaintiff was diagnosed with Keratoconus, a condition of the eye in which the cornea becomes thin and bulges outward. The condition was present in both eyes but predominantly in the left eye. In severe cases, rigid gas permeable ("RGP") hard contact lenses are used to flatten the surface of the cornea. Dr. Judd, Plaintiff's treating optometrist,

///

prescribed and issued RGP lenses for Plaintiff. The RGP lenses worked well and began to flatten the cornea on Plaintiff's left eye.

On August 3, 2006, Plaintiff was transferred to CCI. Upon arrival, custody staff confiscated Plaintiff's RGP lenses, claiming to be following institutional protocol.[1] Plaintiff submitted a medical request form to have his RGP lenses returned or replaced, and he was examined by a nurse who referred him to the facility physician. Four months passed without any appointment, despite Plaintiff's submission of several medical request forms at intervals of two to three weeks.

Plaintiff filed a prison grievance on December 7, 2006. On December 18, 2006, he was seen by Dr. O'Brien who reviewed Plaintiff's medical records, including Dr. Judd's advice that Plaintiff wear RGP lenses at all times to control or even reverse his Keratoconus. Dr. O'Brien ignored Dr. Judd's reports and denied Plaintiff's request for RGP lenses. By now, Plaintiff's vision in his left eye was distorted and worsening. Plaintiff informed Dr. O'Brien about his worsening vision and pleaded for RGP lenses, but Dr. O'Brien ignored him and said he would be referred to an ophthalmologist.

On December 21, 2006, Plaintiff was evaluated by an optometrist who expressed concern about the confiscation of Plaintiff's RGP lenses, recommended they be returned to him, and requested that Plaintiff see an ophthalmologist. Under Departmental Guidelines at the prison, a specialist is not permitted to order medical treatment for a patient, but instead must make a recommendation to the staff/facility physician who must then approve the specialist's recommendation before treatment begins. In this case, the staff/facility physician was Dr. O'Brien, who refused to follow the optometrist's recommendation to provide Plaintiff with RGP lenses.

Approximately three months later, on March 6, 2007, Plaintiff was seen by the ophthalmologist, Dr. S. Wright, who recommended a cornea transplant. By this time, the vision in Plaintiff's left eye had deteriorated to the point that he could not distinguish a face at a distance of

///

---

[1] Plaintiff claims that this set of events was presented and thoroughly explained in his original Complaint, and he does not repeat his allegations regarding custody staff, including defendants Wenciker and Nocye, in the First Amended Complaint.

an arm's length. Plaintiff's right eye was also at risk of deterioration if left untreated. However, Dr. O'Brien continued to ignore Plaintiff's need for RGP lenses.

By this time, Plaintiff was limited in performing daily activities such as watching television or reading a family letter. Plaintiff was no longer able to practice his graphic skills, due to severe headaches and deterioration of his eyesight.

Plaintiff continued to submit medical requests to be allowed RGP lenses. On April 5, 2007, he was seen by Nurse D. Vander, who prescribed the medication Motrin to relieve pain in his left eye and referred him back to Dr. O'Brien. On May 10, 2007, he was seen by Dr. O'Brien who told Plaintiff the only way he would receive RGP hard contact lenses, or any additional treatment, was if he or his family paid for it.

On May 13, 2007, Plaintiff met with Nurse Vander and requested her assistance to get his RGP lenses which were in his family's possession, or to order new ones through his family. Nurse Vander contacted her supervisor, Nurse Boatman, who spoke to Plaintiff on the phone and then instructed Nurse Vander to contact the Chief Medical Officer, Dr. Tate. Dr. Tate did not provide any recommendation.

On May 18, 2007, Plaintiff was evaluated by a cornea specialist, Dr. Richard Moors, at Eye-Q, an off-site facility in Fresno, California. Dr. Moors recommended trying RGP hard contact lenses as a means of treatment, and if that failed to improve Plaintiff's condition, then a cornea transplant. Following that examination, Plaintiff was seen by both Dr. O'Brien and Dr. Tate, who together refused to follow the recommendations and simply referred Plaintiff to another specialist.

On August 15, 2007, Plaintiff was evaluated by another specialist who made the same recommendation to try RGP contact lenses first to see if the cornea on the left eye could be remolded. Dr. O'Brien ignored the recommended treatment.

By this time, one year had passed since Plaintiff's hard contact lenses were confiscated, and he had completely lost the vision in his left eye, and his right eye had also deteriorated.

On November 8, 2007, Plaintiff was transferred to Corcoran State Prison.

///

IV. **PLAINTIFF'S CLAIMS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

### A. <u>Defendants Wenciker and Nocye -- No Personal Participation</u>

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 129 S.Ct. at 1948-49.

In the First Amended Complaint, Plaintiff did not allege any facts whatsoever concerning acts by defendants Wenciker and Nocye. Therefore, Plaintiff fails to state any claim against defendants Wenciker and Nocye.

Plaintiff shall be given leave to file a Second Amended Complaint to cure the deficiencies of the First Amended Complaint described in this order. The Court notes that Plaintiff refers to allegations in the original Complaint against custody staff, including defendants Wenciker and Nocye, which Plaintiff has not repeated in the First Amended Complaint. Plaintiff cannot expect the Court to refer back to a prior complaint and incorporate any part of it into the amended complaint. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the prior complaint no longer serves any function in the case. In an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

B.   **<u>Defendants O'Brien and Tate -- Eighth Amendment Medical Care Claim</u>**

Plaintiff alleges that defendants O'Brien and Tate failed to afford him adequate medical care in the treatment of his eyes. "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096 (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." <u>Id.</u> (citing <u>McGuckin</u>, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." <u>Id.</u>

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a s 1983 claim." <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff alleges that he was diagnosed with Keratoconous, a condition of the eye in which the cornea becomes thin and bulges outward, changing its shape and causing vision problems. Plaintiff also alleges that his vision began worsening after he was transferred to CCI and prison staff confiscated his RGP contact lenses. This qualifies as a serious medical need. However, Plaintiff has not sufficiently alleged that either Dr. O'Brien or Dr. Tate "[knew] of and disregard[ed] an

6

excessive risk to [plaintiff's] health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff fails to allege facts demonstrating that either Dr. O'Brien or Dr. Tate knew there was an excessive risk to Plaintiff's eyesight in withholding RGP lenses, or that they purposely disregarded the risk and acted accordingly or failed to act. Plaintiff uses conclusory language, alleging the doctors "ignored" or "refused" to follow recommendations of other doctors to provide RGP lenses. Plaintiff alleges that in May 2007, Dr. Tate failed to assist him in obtaining RGP contact lenses from his family; however, Plaintiff alleges no facts showing that Dr. Tate even knew he was supposed to assist Plaintiff. At most, Plaintiff's allegations show differences of opinion between Plaintiff and the doctors, and among the doctors themselves, about the best treatment for Plaintiff. Plaintiff fails to allege any facts showing that the treatment he received was medically unacceptable under the circumstances. Therefore, Plaintiff fails to state a cognizable Eighth Amendment medical claim against either Dr. O'Brien or Dr. Tate.

### C. Declaratory Relief

Plaintiff requests monetary and declaratory relief. With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). Plaintiff seeks a declaratory judgment. In this instance, Plaintiff has an adequate remedy at law. In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. A declaration that defendant violated Plaintiff's rights is unnecessary.

## V. CONCLUSION AND ORDER

The Court finds that Plaintiff's complaint fails to state any claims upon which relief can be granted under section 1983 against any of the defendants. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires.'" The Court will

1  provide Plaintiff with time to file a Second Amended Complaint curing the deficiencies identified
2  above, should he wish to do so.
3        Plaintiff must demonstrate in the Second Amended Complaint how the conditions
4  complained of resulted in a deprivation of his constitutional rights. See Ellis v. Cassidy, 625 F.2d
5  227 (9th Cir. 1980), abrogated on other grounds, Elwood v. Drescher, 456 F.3d 943, 946 (9th Cir.
6  2006). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its
7  face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiff must also
8  demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297
9  F.3d at 934 (emphasis added).
10        Plaintiff should note that although he has been given the opportunity to amend, it is not for
11  the purposes of adding unrelated claims. In addition, Plaintiff should take care to include only those
12  claims for which he has exhausted his administrative remedies.
13        Finally, as discussed above, Plaintiff is advised that Local Rule 220 requires that an amended
14  complaint be complete in itself without reference to any prior pleading. As a general rule, an
15  amended complaint supersedes the original complaint. See Loux, 375 F.2d at 57. Once an amended
16  complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an
17  amended complaint, as in an original complaint, each claim and the involvement of each defendant
18  must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second
19  Amended Complaint," refer to the appropriate case number, and be an original signed under penalty
20  of perjury.
21        Based on the foregoing, it is HEREBY ORDERED that:
22        1.    The Clerk's Office shall send Plaintiff a § 1983 civil rights complaint form;
23        2.    Plaintiff's First Amended Complaint is dismissed for failure to state a claim, with
24             leave to file a Second Amended Complaint within **thirty (30) days** from the date of
25             service of this order;
26        3.    Plaintiff shall caption the amended complaint "Second Amended Complaint" and
27             refer to the case number 1:07-cv-01191-LJO-GSA-PC; and
28

4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:   **December 12, 2010**                    **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE